**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| JULIET R. COTTON, | : | MOTION TO VACATE |
|     Movant, | : | 28 U.S.C. § 2255 |
| | : | |
|     v. | : | CRIMINAL NO. |
| | : | 1:01-CR-760-CAP |
| UNITED STATES OF AMERICA, | : | |
|       Respondent. | : | CIVIL ACTION NO. |
| | : | 1:03-CV-3282-CAP |

<u>**ORDER AND OPINION**</u>

Movant, Juliet R. Cotton, a federal prisoner, seeks to challenge pursuant to 28 U.S.C. § 2255 her October 25, 2002, convictions and sentences in this court for the following crimes: (1) two counts of fraud in connection with a scheme and artifice to defraud SouthTrust Bank of Alabama, N.A. ("SouthTrust Bank"), in violation of 18 U.S.C. § 1344; (2) nine counts of using a false writing and document in a matter within the jurisdiction of Export-Import Bank of the United States ("Ex-Im Bank"), in violation of 18 U.S.C. § 1001; (3) six counts of making false statements to SouthTrust Bank, in violation of 18 U.S.C. § 1014; and (4) eighteen counts of engaging in monetary transactions in criminally-derived property, in violation of 18 U.S.C. § 1957.

This matter is pending before this court on Movant's original § 2255 motion [Doc. No. 226], Movant's various supplemental and amended pleadings in support of her § 2255 motion [Doc. Nos. 235, 236, 242, 258, 261, and 271], the

Government's response and related amendments [Doc. Nos. 245, 246, and 247], the Government's supplemental response [Doc. No. 264]; and Movant's reply to the Government's supplemental response [Doc. No. 272].   For the reasons set forth in detail below, Movant's § 2255 motion, as amended and supplemented, will be denied.

## I.   __Factual Background__

SouthTrust Bank, a federally-insured financial institution, made two loans totaling more than $18.0 million available to Quality Grain Company (Ghana) Ltd., a corporation organized under the laws of the Republic of Ghana ("QGC (Ghana)"), to finance the purchase of equipment and services to build a commercial rice mill in the Republic of Ghana, West Africa.  (Govt. Exs. 1, 2, 22, 24, 27, 72, 103, 201, 202, 215, 2204) (Trial Transcript ("T") at 837-38).  At all relevant times, Movant, then known as "Juliet R. Woodard," was president of QGC (Ghana).  (Govt. Exs. 2, 201, 2204) (T at 90).   Movant was also president of Quality Grain Company, Inc., a corporation organized under the laws of the State of Tennessee ("QGC, Inc.").  (Govt. Exs. 38, 95, 3601) (T at 848-50).

On November 13, 1996, SouthTrust Bank made approximately $6.0 million available to QGC (Ghana) to purchase equipment for the Ghana project, which was insured by the Ex-Im Bank and

2

guaranteed by the government of Ghana (hereinafter "Ex-Im loan"). (Govt. Exs. 2, 22, 23, 24, 26, 27) (T at 87).  On November 27, 1996, SouthTrust Bank issued a letter of credit under the Ex-Im loan, for the benefit of "Agri-Tech," in the amount of $3,372,680.95, on the application of borrower, QGC (Ghana). (Govt. Exs. 2, 3, 112) (T at 247). The letter of credit required that a signed invoice, marked "accepted" by QGC (Ghana), and an exporter's certificate accompany each request for payment under the letter of credit.  (Govt. Exs. 3, 112) (T at 247).

As part of SouthTrust Bank's approval of the Ex-Im loan, Movant represented that James McGarrh, a sole proprietor, d/b/a "Agri-Tech," would supply management and technical services and technology transfer to QGC (Ghana), as a non-affiliated supplier to borrower, under an agreement dated November 7, 1996, that Movant executed on behalf of the borrower, QGC (Ghana).  (Govt. Exs. 16, 3601) (T at 258, 839-42).  SouthTrust Bank required this arrangement because it would not permit Movant, as she had intended, to sign both as a borrower and as a seller to borrower. (Govt. Ex. 3601) (T at 839-42, 1085-86).  Consequently, pursuant to the November 7, 1996, agreement, QGC (Ghana) agreed to pay Agri-Tech, $3,372,680.95 for providing specified services and technology transfer for a period of three years to ensure that the project maintained "world class standards" for a commercial

rice farm and rice processing mill. (Govt. Ex. 16) (T at 840-42).

Beginning on November 26, 1996, Movant "accepted" "Agri-Tech" invoices on behalf of borrower that were submitted to SouthTrust Bank for payment that represented that "Agri-Tech" was due $3,516,865.61 (less the 15% cash down payment that he received) from borrower for services specified in the invoices. (Govt. Exs. 4, 6, 8, 10, 12, 16, 53, 55). Mr. McGarrh, d/b/a "Agri-Tech," however, did not provide the borrower, QGC (Ghana), those services under the November 7, 1996, agreement that were specified in the "Agri-Tech" invoices that were submitted to the bank for payment. (T at 623-33). All of the "Agri-Tech" invoices that were submitted to SouthTrust Bank for payment under the Ex-Im loan were false. (Govt. Exs. 4, 6, 8, 10) (T at 623-33).

The idea of using "Agri-Tech" as a non-affiliated supplier to the borrower, QGC (Ghana), was Movant's device to obtain commissions on the equipment that would be sold to QGC (Ghana) for the rice project and would be paid for with proceeds of the SouthTrust Bank loan. (T at 617-18). According to Mr. McGarrh, Movant told him, "Jim, I want you to go down and get a license so that we can start buying the equipment for this project, cause somebody is going to make a commission off of the equipment that

4

is sold and it might as well be us." (T at 617-18). Mr. McGarrh responded by asking, "What would you like to call it then?" (T at 617). Movant replied, "Well, just call it Agri-Tech." (T at 617). Mr. McGarrh estimated that there would be, "a million dollars worth of commissions," for equipment that was to be purchased by QGC (Ghana) for the project, which was to be divided among Movant, Mr. McGarrh, and Movant's uncle, Oscar Hudson. (T at 618, 647-48).

After Mr. McGarrh obtained the "Agri-Tech," d/b/a license, he met Movant in Atlanta, Georgia. (T at 620). Movant asked Mr. McGarrh "to sign documents to get money from SouthTrust Bank." (T at 620). Movant said, "If you will sign these papers, I can take it from there and it will be convenient for me and a lot less trouble for you." (T at 620). Mr. McGarrh signed the "papers," which included blank "Agri-Tech" invoices, as Movant requested. (Govt. Exs. 7A, 10B, 11, 63, 64, 65, 66, 67) (T at 620, 672-79). On November 25, 1996, Mr. McGarrh opened a "d/b/a Agri-Tech" account at First Tennessee Bank in Cordova, Tennessee, with an opening balance of $10.00. (Govt. Exs. 42, 122) (T at 606, 663). "Agri-Tech" was a bank account of Movant and QGC, Inc. (Govt. Ex. 55) (T at 663-64, 686).

On November 27, 1996, SouthTrust Bank wire transferred $1,954,389.00 of Ex-Im loan proceeds to "Agri-Tech" at First

Tennessee Bank in payment of a false "Agri-Tech" invoice dated November 26, 1996, for $2,299,281.40, that was "accepted" by Movant on behalf of borrower. (Govt. Exs. 4, 40, 41, 42, 120) (T at 305-06). That same day, Movant directed Mr. McGarrh to transfer $1,953,389.00 of the $1,954,389.00 from "Agri-Tech" to QGC, Inc. (Govt. Exs. 4, 42, 43, 44, 45) (T at 640-42, 662-64, 1103-04, 1109-110). Mr. McGarrh did not know either that the $1,954,389.00 wire transfer was in the "Agri-Tech" account or the identity of the account into which the money was transferred. (T at 640-42). Mr. McGarrh knew only that the money wound up with Movant. (T at 663-64, 689).

After the "Agri-Tech" funds were transferred to QGC, Inc., Movant engaged in monetary transactions in the criminally-derived property – namely, the $1,953,389.00 of Ex-Im loan proceeds that had been taken from SouthTrust Bank by the false "Agri-Tech" invoice. On December 1, 1996, Movant transferred three checks drawn on her QGC, Inc. account at First Tennessee Bank, totaling $122,000.00, to Gospel Tabernacle Church, in Atlanta, Georgia. (Govt. Exs. 4, 42, 43, 44, 45, 47, 500, 600, 603, 700).

On November 8, 1996, Movant agreed to purchase a residence in Duluth, Georgia, for $1,100,000.00, to close on November 29, 1996. (Govt. Ex. 400). As part of the purchase agreement, the parties stipulated that Movant's application for a mortgage loan

6

would not be made until after November 26, 1996. (Govt. Ex. 400, 402, 425). On November 29, 1996, a First Tennessee Bank response to a request from Movant's mortgage company for verification of deposit for account number 200730602, for Juliet R. Woodard, showed that there was a balance in the account (the corporate account of QGC, Inc.) of $1,954,216.56, as of November 29, 1996. (Govt. Exs. 45, 127, 128, 407, 408, 410).

On November 29, 1996, Movant opened a personal account at Wachovia Bank in Atlanta, Georgia, with an initial deposit of $500.00. (Govt. Ex. 424). On December 2, 1996, First Tennessee Bank made a wire funds transfer of $650,000.00 of "Agri-Tech" funds from QGC, Inc.'s corporate account to defendant's personal account at Wachovia Bank. (Govt. Exs. 4, 42, 43, 44, 47, 424, 800, 801). On December 10, 1996, Movant withdrew $540,000.00 from her Wachovia Bank personal account (Govt. Exs. 419, 1100, 1101), and Movant delivered a Wachovia check for $540,000.00 to the closing attorney to pay cash due at the closing of the purchase of the residence. (Govt. Exs. 425, 1200).

The credit insurance policy that Ex-Im Bank issued to SouthTrust Bank covering the Ex-Im loan required borrower, QGC (Ghana), to make payments to suppliers in cash equal to $1,050,000.00. (Govt. Exs. 20, 22, 23, 24, 26). On December 4, 1996, Movant opened a corporate account for QGC, Inc., at

7

SouthTrust Bank, in Atlanta, Georgia. (Govt. Ex. 133). On December 5, 1996, First Tennessee Bank wire transferred $1,050,000.00 of "Agri-Tech" funds from the QGC, Inc. Corporate account at First Tennessee Bank to Movant's new QGC, Inc. corporate account at SouthTrust Bank. (Govt. Exs. 42, 43, 44, 45, 46, 47, 48, 49, 49A, 133). On December 10, 1996, at Movant's direction, SouthTrust Bank made an intra-bank transfer of $1,050,000.00 from the QGC, Inc. corporate account to an "escrow account," to satisfy the $1,050,000.00 cash down payment that QGC (Ghana) was required by Ex-Im Bank to make to suppliers. (Govt. Exs. 2, 20, 23, 24, 26, 49, 50, 51, 55, 84, 103, 350) (T at 306-07).

Exporter's certificates, which were required by Ex-Im Bank to be submitted to SouthTrust Bank, certified that "Agri-Tech" received cash payments from QGC (Ghana) totaling $544,000.00 for services described in the false "Agri-Tech" invoices. (Govt. Exs. 5, 7, 9, 10A). Mr. McGarrh, d/b/a "Agri-Tech," however, did not receive cash payments from QGC (Ghana) for services rendered. (T at 482-83, 632, 687-89). In total, SouthTrust Bank disbursed $2,284,580.32 of the $6.0 million Ex-Im loan proceeds in reliance on the false "Agri-Tech" invoices "accepted" by Movant. All of these loan proceeds ultimately went to Movant directly or to bank accounts that Movant controlled. (Govt. Exs.

8

12, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 49A, 50, 51, 52, 53, 55, 69, 127, 133, 153, 156, 162, 163, 164, 165, 215, 302, 308, 310, 311) ( T at 623-33, 662-64, 689, 870-72).

In July, 1997, SouthTrust Bank made a second loan available to QGC (Ghana) (sometimes referred to herein as the "Natwest Loan") in the amount of $12.0 million to purchase farm equipment and other purposes for operation of borrower's business in Ghana, which was guaranteed by the Republic of Ghana but not insured by Ex-Im Bank.  (Govt. Exs. 72, 2204).  In August, 1997, upon application of QGC (Ghana), SouthTrust Bank issued a letter of credit for $2,215,000.00 for the benefit of Agri-Tech under the second loan. (Govt. Ex. 2204, 2207, 2208).  The letter of credit required that an invoice accepted by QGC (Ghana) accompany each request for payment. (Govt. Exs. 2207, 2208) (T at 308-309, 838). SouthTrust Bank disbursed $2,215,000.00 of proceeds of the second loan to Movant and QGC, Inc., to pay a false "Agri-Tech" invoice that was "accepted" by Movant on behalf of the borrower, QGC (Ghana).  (Govt. Exs. 53, 55, 61, 69, 71, 72, 2209, 2214, 2218, 2219, 2222, 2224) (T at 313, 643).

Movant engaged in the following monetary transactions on various dates in criminally-derived property in connection with the $2,215,000.00 proceeds from the second loan:

9

(1)   on August 8, 1997, SouthTrust Bank transferred $200,000.00 in cash proceeds of the second loan directly to Movant. (Govt. Exs. 61, 69, 71, 72, 2209) (T at 464, 466-67, 475-78, 908);

(2)   on August 8, 1997, Movant delivered $65,150.30 of United States currency to Tiffany & Company to purchase jewelry. (Govt. Exs. 2209, 2400, 2401) (T at 542-45);

(3)   on August 11, 1997, Movant paid $30,000 in United States currency to a travel agent for arrangements for her wedding and honeymoon. (Govt. Exs. 2209, 2500, 2501) (T at 536-39);

(4)   on August 26, 1997, Movant ordered a $50,000 wire transfer from the QGC, Inc. corporate account at SouthTrust Bank to her personal account at Wachovia Bank. (Govt. Exs. 2600, 2601)(T at 908);

(5)   on August 26, 1997, Movant ordered a wire transfer of funds of $100,000 from the account of QGC, Inc. at SouthTrust Bank in Atlanta, Georgia, to the QGC, Inc. account at First Tennessee Bank, in Memphis, Tennessee. (Govt. Exs. 2701, 2313) (T at 908);

(6)   on August 27, 1997, defendant ordered a wire transfer of funds for $79,000 from the QGC, Inc. account at SouthTrust Bank to her mother's account in Mississippi to purchase real estate. (Govt. Exs. 2327, 2800, 2801, 2802, 2810) (T at 908); and

(7)   on August 27, 1997, Movant ordered a wire transfer of funds for $100,000.00 from the QGC, Inc. account at SouthTrust Bank to her personal account at Wachovia Bank. (Govt. Exs. 2317, 2900, 2900A, 2901) (T at 908).

In September, 1997, Movant applied for a second letter of credit on behalf of QGC (Ghana) under the second loan for the benefit of "Agri-Tech," for $4,943,715.23. (Govt. Ex. 3000).

10

Additional loan proceeds totaling that amount were then paid out by SouthTrust Bank in reliance on two false "Agri-Tech" invoices "accepted" by Movant on behalf of QGC (Ghana). (Govt. Ex. 53, 55, 62, 68, 69, 71, 72, 2230, 2234, 3103) (T at 314-15, 623-33, 643-44). Movant conducted the following monetary transactions on various dates in criminally-derived property in connection with the $4,943,715.23 proceeds from the second loan:

(1)  on October 17, 1997, Movant ordered a wire transfer of funds of $26,000.00 from the account of QGC, Inc. at SouthTrust Bank to her in-laws' account in Omaha, Nebraska. (Govt. Exs. 3100, 3101, 3102, 3103) (T at 908);

(2)  on October 17, 1997, Movant ordered a wire transfer of funds of $500,000.00 from the QGC, Inc. account at SouthTrust Bank to the account of QGC, Inc. at First Tennessee Bank. (Govt. Exs. 3200, 3201, 3202) (T at 908);

(3)  on November 13, 1997, SouthTrust Bank made a wire transfer of "Agri-Tech" funds of $3,281,831.00 to the First Tennessee Bank account of QGC, Inc. (Govt. Exs. 71, 72, 2235, 2236) (T at 908);

(4)  on November 26, 1997, Movant transferred a check on the account of QGC, Inc. at First Tennessee Bank, for $59,598.35, to Troncalli Jaguar in order to purchase a Jaguar automobile. (Govt. Exs. 3009, 3010, 3300, 3301); and

(5)  on December 15, 1997, Movant wrote a $3,300,000.00 check payable to "Juliet Woodard" drawn on QGC, Inc. account at First Tennessee Bank, which she then deposited into her personal account at SunTrust Bank in Atlanta, Georgia. (Govt. Exs. 3400, 3402, 3403, 3404).

AO 72A
(Rev.8/82)

In sum, SouthTrust Bank transferred $7,225,706.23 of proceeds of the second loan for Movant or QGC, Inc. for payment of three false "Agri-Tech" invoices that were accepted by Movant on behalf of borrower. (See Govt. Exs. 61, 62, 68, 71, 72, 2204, 2209, 2214, 2218, 2219, 2222, 2224, 2225, 2230, 2231, 2234, 2235, 2236, 2314) (T at 623-33, 643-44, 688-89).

In June, 2001, SouthTrust Bank made a demand on the Republic of Ghana to pay the Ex-Im loan payment that was due March 15, 2001. (Govt. Ex. 256). Even though it was a guarantor of payment of the Ex-Im and Natwest loans to QGC (Ghana), the Republic of Ghana refused to comply with SouthTrust Bank's request to pay because, "the transaction that had already cost the government of Ghana $21,000,000, for very little value." (Govt. Exs. 2, 258, 2204). Nevertheless, the Republic of Ghana paid SouthTrust Bank approximately $20,176,000.00 in principal and interest. (Govt. Exs. 27, 28) (see Pre-Sentence Investigation Report ("PSR") at ¶ 97). QGC (Ghana) made no payments of principal or interest on either loan, except for the first payment on the first loan, which was deducted from QGC, Inc. account at SouthTrust Bank from proceeds of the second loan, derived from false "Agri-Tech" invoices. (Govt. Exs. 61, 62, 68, 69, 71, 224) (T at 710-11).

On July 13, 2001, SouthTrust Bank submitted a proof of loss to Ex-Im Bank claiming an insured loss of $2,061,527.59, based

on "protracted payment default." (Govt. Exs. 27, 250, 252, 256, 257, 258) (T at 318-19, 322-23).   With the proof of loss, SouthTrust submitted to Ex-Im Bank false "Agri-Tech" invoices, related false exporter's certificates, and the November 7, 1996, management and technical services agreement, upon which the false "Agri-Tech" invoices and false exporter's certificates were based. (Govt. Exs. 4, 5, 27, 29, 30, 31, 32).

## II.   Procedural History

On November 6, 2001, a federal grand jury for the Northern District of Georgia returned a multi-count indictment charging Movant with  (1) two counts of fraud in connection with a scheme and artifice to defraud SouthTrust Bank, in violation of 18 U.S.C. § 1344 (Count 1 and Count 22); (2) nine counts of using a false writing and document in a matter within the jurisdiction of Ex-Im Bank, in violation of 18 U.S.C. § 1001 (Counts 2, 3, 13, 14, 16, 17, 19, 20, 35); (3) six counts of making false statements to SouthTrust Bank, in violation of 18 U.S.C. § 1014 (Counts 4, 15, 18, 21, 23, 30); and (4) eighteen counts of engaging in monetary transactions in criminally-derived property, in violation of 18 U.S.C. § 1957. (Counts 5-12, 24-29, 31-34).  [Doc. No. 1].

Following the appointment of Kevin R. Brehm as Movant's counsel, Movant was arraigned on November 7, 2001, where she

13

entered a plea of not guilty to the indictment.  [Doc. No. 3]. On November 15, 2001, Mr. Brehm filed a motion to suppress evidence on behalf of Movant along with several other pre-trial motions. [Doc. Nos. 6-13].  At a November 26, 2001, pre-trial conference, Magistrate Judge Linda T. Walker granted the following motions filed on behalf of Movant: (1) motion for Government notice of intent to use evidence arguably subject to suppression [Doc. No. 6-2]; (2) motion for disclosure of expert testimony [Doc. No. 7]; (3) motion to compel disclosure of impeachment information [Doc. No. 8]; (4) motion for discovery [Doc. No. 9]; (5) motion for return of seized property [Doc. No. 10]; (6) motion to preserve evidence [Doc. No. 11]; (7) motion for disclosure of list of witnesses [Doc. No. 12]; and (8) motion for early production of Jencks material [Doc. No. 13].

On December 12, 2001, Mr. Brehm filed a brief in support of Movant's motion to suppress evidence, challenging the search of Movant's residence.  [Doc. No. 15].  Thereafter, on January 29, 2002, the magistrate issued a Report and Recommendation that recommended denying the motion to suppress evidence.  [Doc. No. 17].  On that day, the magistrate also certified the case for trial.  After Mr. Brehm filed objections to the Report and Recommendation [Doc. No. 20] on behalf of Movant, this court adopted the Report and Recommendation and denied the motion to

14

suppress evidence. [Doc. No. 23]. Movant's trial was originally scheduled to begin on April 1, 2002. On March 6, 2002, Movant, through counsel, filed a motion to continue the trial date. [Doc. No. 29]. Mr. Brehm also filed a motion for discovery of computer information and materials. [Doc. No. 31]. At a pre-trial hearing conducted on March 26, 2002, this court granted Movant's motion for discovery of computer information and materials, granted Movant's motion to continue the trial date, and set a new trial date of June 3, 2002. [Doc. No. 32].

On May 10, 2002, Movant, through her counsel, filed a motion for an additional continuance of the trial date. [Doc. No. 39]. On May 15, 2002, this court denied the motion for an additional continuance. [Doc. No. 41]. On May 30, 2002, Movant, through counsel, filed a motion to reconsider the May 15, 2002, Order. [Doc. No. 46]. By Order filed that same day, this court denied Movant's motion for reconsideration. [Doc. No. 47].

On May 31, 2002, Movant filed a pro se request to delay the trial and a request for the Court to appoint new counsel. [Doc. No. 103]. Before the commencement of jury selection on June 3, 2002, Movant and Mr. Brehm announced that they were not ready for trial and again urged a continuance. [Doc. No. 132] (T at 3-27). This court addressed Movant's concerns about her appointed attorney, denied the May 31, 2002, motions for a continuance and

15

for new counsel, and denied the oral motion for a continuance. [Doc. No. 132] (T at 27-29). Subsequently, Movant's jury trial began on June 3, 2002.

On June 11, 2002, at the end of the Government's case-in-chief, Mr. Brehm filed a motion for judgment of acquittal as to all 35 counts of the indictment, which was denied by this Court. [Doc. No. 140]. At the close of all evidence, Mr. Brehm renewed his motion for judgment of acquittal as to all counts, which was also denied by this court. [Doc. No. 143]. On June 17, 2002, the jury returned its verdict finding Movant guilty on each count of the indictment. [Doc. No. 148].

On June 24, 2002, Mr. Brehm filed a motion for new trial on behalf of Movant. [Doc. No. 151]. In the initial brief, Mr. Brehm asserted that a new trial should be granted for the following reasons: (1) ineffective assistance of counsel; (2) hybrid representation; (3) denial of continuance; and (4) admission of improper evidence. [Doc. No. 151]. Movant prepared and submitted a supplemental brief in support of her motion for new trial. [Doc. No. 156]. Therein, Movant stated that she was entitled to a new trial because of ineffective assistance of counsel, intimidation of witnesses by the Government, and the tampering with and suppression of evidence, specifically bank records. [Doc. No. 156]. On August 5 and 8, 2002, Mr. Brehm

16

filed a motion for a change of counsel and a supplement to that motion, respectively. [Doc. Nos. 157, 158].

On October 17, 2002, this court conducted a hearing on several motions, including the motion for new trial and motion for change of counsel. At that hearing, this court heard argument from Mr. Brehm, Movant, and the Government. By Order entered October 22, 2002, this court denied the motion for new trial and the motion for change of counsel. [Doc. No. 178].

On October 24, 2002, this court conducted a hearing in which it first considered the issue of forfeiture. [Doc. No. 185] (October 24, 2002, Sentencing Transcript ("ST") at 1). This court determined the forfeiture amount to be $9,510,286.55. [Doc. Nos. 186, 187] (ST at 16). Next, this court proceeded with the sentencing of Movant at the October 24, 2002, hearing.

Prior to sentencing, the probation officer had prepared a PSR. Therein, the probation officer calculated loss and restitution in the amount of $20,163,489.37 for the Republic of Ghana, who had guaranteed the two loans in question. (PSR at ¶ 97). After calculating the total loss, the probation officer recommended a substantial sixteen-level enhancement to the base offense level. (PSR at ¶ 101). Mr. Brehm objected to the characterization of the Republic of Ghana in the PSR as a "victim" of the scheme, because the indictment only alleged

17

offenses for which only SouthTrust Bank could have been a victim. (ST at 21-25). Mr. Brehm argued that Movant should have only been subjected to a twelve-level enhancement to the base offense level. (ST at 21-25).

After considering argument and taking evidence regarding the issue of loss, this court overruled Mr. Brehm's objection and determined that the Republic of Ghana should be considered a victim. (ST at 72). Consequently, this court determined the total loss amount to be in excess of $20 million, which supports the enhancement to the base offense level as calculated by the probation officer. (ST at 72, 74-75).

At sentencing, Mr. Brehm raised several additional objections to the PSR's recommendation of various enhancements to Movant's base offense level. (ST at 75-85). This court overruled all of the objections, with the exception that it reduced the aggravating role enhancement from four levels to two levels. (ST at 75-87). Finally, this court denied Mr. Brehm's motion for a downward departure. (ST at 96-97).

Accordingly, this court sentenced Movant to the custody of the Federal Bureau of Prisons as follows: (1) a term of 180 months on Counts 1, 4, 15, 18, 21, 22, 23, and 30, all to run concurrently; (2) a term of 120 months on Counts 5, 6, 7, 8, 9, 10, 11, 12, 24, 25, 26, 27, 28, 29, 31, 32, 33, and 34, all to

18

run concurrently; and (3) a term of 60 months on Counts 2, 3, 13, 14, 15, 17, 19, 20, and 35, all to run concurrently. [Doc. No. 187] (ST at 114).   Further, this court imposed a special assessment of $3,500.00, with supervised release for a term of five years on all counts, all such terms to run concurrently, and ordered that Movant make restitution to victims in the amount of $22,225,016.96. [Doc. No. 187] (ST at 114-15).

Through Mr. Brehm, Movant filed a timely notice of appeal on October 28, 2002. Movant presented the following issues to the Eleventh Circuit Court of Appeals:

(1)   whether the trial court erred and violated Movant's due process rights when it denied her motion for continuance of the trial;

(2)   whether the trial court erred and violated Movant's due process rights by denying her ineffective assistance of counsel claim without an adequate evidentiary hearing;

(3)   whether the trial court erred and violated Movant's right to a fair trial by improperly permitting hybrid representation throughout the course of the trial;

(4)   whether the trial court erred by denying Movant's motion for judgment of acquittal;

(5)   whether the trial court erred by denying Movant's motion to suppress evidence;

(6)   whether the trial court abused its discretion by permitting Government counsel, over objection, to introduce evidence regarding alleged improper monetary transactions of Movant that were not charged in the indictment; and

19

> (7)   whether the sentencing court erred in calculating the Sentencing Guidelines range by improperly enhancing the base offense level based on the amount of loss.

On September 25, 2003, the Eleventh Circuit, with the exception of ruling on Movant's ineffective assistance of counsel claim, rejected Movant's grounds and  affirmed Movant's convictions and sentences.   [Doc. No. 223].

### III.   The Instant § 2255 Motion

On October 28, 2003, Movant filed her original § 2255 motion.   [Doc. No. 226].   Thereafter, Movant has submitted various supplemental and amended pleadings in support of her § 2255 motion.   [Doc. Nos. 235, 236, 242, 258, 261, and 271].   In her § 2255 motion, as supplemented and amended,  Movant raises the following grounds for relief:

> (1)   Movant was denied the right to represent herself at trial (Grounds 1 and 12);

> (2)   counsel rendered ineffective assistance of counsel during pre-trial, trial, and post-trial, and on appeal (Grounds 2 and 3);

> (3)   Movant's due process rights were violated when the trial court denied her claim of ineffective assistance of counsel without an evidentiary hearing (Ground 4);

> (4)   the Government withheld exculpatory evidence from the grand jury and the jury at trial  (Ground 5);

> (5)   the evidence was insufficient to support the guilty verdicts and convictions (Ground 6);

20

(6)      Movant was denied a photocopy of seized business and personal records (Ground 7);

(7)      counsel rendered ineffective assistance of counsel on direct appeal (Ground 8);

(8)      the trial transcript was insufficient (Ground 9);

(9)      Movant was denied her right to submit <u>pro se</u> motions on direct appeal (Ground 10);

(10)     the indictment was multiplitous (Ground 11);

(11)     the undersigned was biased toward Movant at trial which prejudiced her defense (Ground 13);

(12)     the prosecutor and the undersigned interfered with Movant's right to present a defense, including calling defense witnesses (Ground 14);

(13)     Movant's conviction was obtained in violation of the Double Jeopardy Clause (Ground 15);

(14)     the trial court and the Eleventh Circuit erred and violated Movant's rights under 28 U.S.C. § 1915(d) when it denied her court-appointed counsel's various requests to withdraw (Ground 16);

(15)     the trial court committed several errors at sentencing (Ground 17);

(16)     Movant was forced to keep counsel who had not been admitted to the United States District Court until March 2, 2004 (Ground 18);

(17)     the trial court erred in denying Movant's motion for judgment of acquittal (Ground 19);

(18)     the trial court abused its discretion by permitting evidence regarding improper

21

monetary transactions not charged in the
indictment (Ground 20);

(19)     the trial court erred in permitting hybrid
representation at trial (Ground 21); and

(20)     the trial court erred and violated several of
Movant's constitutional rights when it forced
Movant to abandon work on her bankruptcy case
(Ground 22).

[Doc. Nos. 226, 235, 236, 258, and 261].

## IV.  <u>Standard of Review</u>

Federal courts have consistently held that a collateral

challenge to a federal conviction and sentence, such as the

instant § 2255 motion, "may not be a surrogate for a direct

appeal." <u>Lynn v. United States</u>, 365 F.3d 1225, 1232 (11th Cir.),

<u>cert. denied</u>, 125 S.Ct. 167 (2004).  As stated by the Supreme

Court, "[o]nce a defendant's chance to appeal has been waived or

exhausted, . . . we are entitled to presume [she] stands fairly

and finally convicted, especially when . . . [she] already has

had a fair opportunity to present [her] federal claims to a

federal forum."  <u>United States v. Frady</u>, 456 U.S. 152, 164

(1982).  Thus, "to obtain collateral relief a prisoner must clear

a significantly higher hurdle than would exist on direct appeal."

<u>Id.</u> at 166.  Federal courts may deny § 2255 relief without an

evidentiary hearing if "the motion and the files and records of

the case conclusively show that the prisoner is entitled to no

22

relief."  28 U.S.C. § 2255; <u>Long v. United States</u>, 883 F.2d 966, 968 (11th Cir. 1989).

The threshold inquiry in considering § 2255 claims is whether the alleged errors are cognizable in a § 2255 proceeding. <u>Lynn</u>, 365 F.3d at 1233.  As recognized in <u>Lynn</u>, "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." <u>Lynn</u>, 365 F.3d at 1232 (quoting <u>Richards v. United States</u>, 837 F.2d 965, 966 (11th Cir. 1988)) (internal quotation and citation omitted).

Even if the claims are technically cognizable in a § 2255 motion, a movant must, nevertheless, assert all challenges on direct appeal.  <u>See</u> <u>Mills v. United States</u>, 36 F.3d 1052, 1055 (11th Cir. 1994).  If available challenges to a federal criminal conviction or sentence are not advanced on direct appeal, those claims will be considered procedurally defaulted in a § 2255 proceeding.  <u>Id.</u>  "This rule applies to all claims, including constitutional claims." <u>Lynn</u>, 365 F.3d at 1234. A claim is "usually 'available' on direct appeal when its merits can be reviewed without further factual development." <u>Id.</u>

Absent a showing that the claim was unavailable, a § 2255 movant can avoid a procedural bar of the claim by demonstrating

23

one of two exceptions to the general procedural default rule. Lynn, 365 F.3d at 1234. Under the first exception, the movant must establish "cause for not raising the claim of error on direct appeal *and* actual prejudice resulting from the alleged error." Id. (emphasis in original). Under the second exception (sometimes referred to as the "fundamental miscarriage of justice exception"), the court may excuse the failure to show cause for a procedural default if "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Id. at 1234-35 (internal quotation and citation omitted).[1]

## V.   Analysis

### A.   Grounds 1 and 12

In Ground 1, Movant claims that she was denied the right to represent herself at trial. Movant essentially makes the same claim in Ground 12 when she asserts that she had counsel forced upon her. In connection with these claims, Movant contends that the undersigned denied her requests to represent herself on two

---

[1] Although Movant makes scattered references of innocence throughout the pleadings in connection with her § 2255 claims, she has failed to demonstrate that her case is an extraordinary one "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." See Murray v. Carrier, 477 U.S. 478, 496 (1986). Accordingly, this court will confine its analysis below to determining whether Movant can establish the standard "cause and prejudice" for failing to raise a particular issue on direct appeal.

occasions and that the undersigned otherwise failed to conduct a hearing pursuant to Faretta v. California, 422 U.S. 806 (1975), in order to inquire whether Movant truly wished to waive counsel.

Movant's claim in Grounds 1 and 12 were not raised on direct appeal, and are, therefore, procedurally barred in the instant § 2255 motion unless Movant can establish a sufficient basis for overcoming the procedural bar.   See Mills, 36 F.3d at 1055. Movant claims that her counsel, Mr. Brehm rendered ineffective assistance, in part, because he failed to object to the trial court's denial of Movant's right to represent herself.  Movant further claims that Mr. Brehm rendered ineffective assistance when he failed to raise this issue on appeal.

Ineffective assistance of counsel may constitute cause to overcome the procedural bar which would otherwise block § 2255 claims not raised on direct appeal. United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (citing Greene v. United States, 880 F.2d 1299, 1305 (11th Cir. 1989)).  The court in Nyhuis explained the showing necessary for a claim of ineffective assistance of counsel to satisfy the cause requirement:

> [a] claim of ineffective assistance must have merit. (Citation omitted).  To determine whether it does, [the court] must decide whether the arguments the defendant alleges his counsel failed to raise were significant enough to have affected the outcome of his appeal. (Citation omitted).   Appellate counsel is not ineffective for failing to raise claims "reasonably

25

considered to be without merit." <u>Alvord v. Wainwright</u>, 725 F.2d 1282, 1291 (11th Cir. 1984).

211 F.3d at 1344. Even if Movant could establish cause, Movant has failed to demonstrate the requisite prejudice to excuse her failure to raise Grounds 1 and 12 on direct appeal because these grounds are without merit. <u>See</u> <u>Fortenberry v. Haley</u>, 297 F.3d 1213, 1222 (11th Cir. 2002).

In <u>Faretta</u>, the Supreme Court held that the Sixth Amendment provides criminal defendants the right to defend themselves if they so desire. <u>Faretta</u>, 422 U.S. at 818-23. However, the Supreme Court noted that the defendant should be made aware of the disadvantages and dangers of self-representation so that he can know what he is doing when he makes this choice. <u>Id.</u> at 835. The ideal method for determining that the defendant understands the consequences of waiving counsel is through a pre-trial hearing, known as a "<u>Faretta</u> inquiry." <u>United States v. Kimball</u> 291 F.3d 726, 729 (11th Cir. 2002).

"Because self-representation necessarily entails the waiver of the sixth amendment right to counsel, a trial court can commit reversible constitutional error . . . by denying a proper assertion of the right to represent oneself, and thereby violating <u>Faretta</u>. <u>Cross v. United States</u>, 893 F.2d 1287, 1290 (11th Cir. 1990). The Eleventh Circuit in <u>Cross</u> recognized that

26

district courts must traverse a thin line in considering a request to proceed pro se because "shrewd litigants can exploit this difficult constitutional area by making ambiguous self-representation claims to inject error into the record." Id. Consequently, the Eleventh Circuit requires a defendant "to clearly and unequivocally assert the desire to represent [herself]." Id..

In this case, this court can find no place in the record where Movant "clearly and unequivocally" asserted a desire for self-representation at trial. Before her trial began on June 3, 2002, Movant informed the court that she was dissatisfied with her counsel's performance in preparing for her trial and that a continuance was, therefore, necessary. (T at 17-27). At no point in this discussion did Movant "clearly and unequivocally" request that she represent herself. Rather, the record reflects that this court addressed Movant's concerns about Mr. Brehm and then denied the various written and oral motions for a continuance and for new counsel. [Doc. No. 132] (T at 27-29).

Upon careful review, there is no indication in the record that Movant made a direct request to represent herself and that this court summarily denied such a request.[2] Rather than clearly

---

[2] Likewise, Movant provides no support for her claim that the undersigned and the Government colluded to alter the trial

seek permission to proceed <u>pro</u> <u>se</u>, the record more strongly reflects Movant's desire before the commencement of trial for either the appointment of new counsel or for permission to act as co-counsel. [Doc. No. 103] (T at 25, 28-29). Thus, without any "clear or unequivocal" request to represent herself, this court committed no reversible error by failing to conduct a <u>Faretta</u> inquiry regarding the issue of waiving counsel. Movant, therefore, is not entitled to any § 2255 relief with respect to her claims in Grounds 1 and 12 as they are without merit.

B. **Grounds 2, 3, and 8**

While difficult to decipher Movant's rambling and sometimes illogical and incoherent § 2255 motion, Movant appears to contend that Mr. Brehm was ineffective in Grounds 2 and 3 in connection with the trial proceedings as follows: (1) counsel did not properly investigate Movant's case by failing to interview and subpoena witnesses and to depose the Government's witnesses; (2) counsel failed to adequately prepare for the trial; (3) counsel failed to conduct adequate cross-examinations or object to the admissibility of certain evidence; (4) counsel suppressed evidence, including alleged fake loan documents, that would serve

---

transcripts by deleting those portions in which Movant expressed a desire to represent herself and that such request was denied by this court.

28

to negate guilt on almost all of Movant's counts of conviction; (5) counsel failed to obtain a continuance before the trial commenced; (6) counsel failed to object at trial with respect to alleged prejudicial conduct exhibited by the undersigned and the prosecutor; (7) counsel failed to object to the fact that the trial transcript had been altered; (8) counsel forced Movant to take the stand; (9) counsel failed to attack the indictment based upon the fact that it states "multiplicitous" counts; (10) counsel failed to move for a mistrial; (11) counsel failed to attack the trial court's decision to deny Movant's request to proceed pro se at trial; (12) counsel failed to disclose to Movant the contents of the PSR; and (13) counsel was ineffective at sentencing by failing to bring proper objections to the various enhancements and upward departures.

In Ground 8, Movant contends that Mr. Brehm rendered ineffective assistance counsel on direct appeal as follows: (1) counsel failed to challenge the trial counsel's denial of Movant's request to represent herself in connection with her motion for new trial and on direct appeal; (2) counsel failed to file any of Movant's pro se motions on direct appeal; (3) counsel failed to raise the issue of "multiplicity" on direct appeal; and (4) counsel failed to challenge the denial of Movant's right to represent herself in her criminal trial.

Movant failed to raise any of her specific ineffective assistance of trial counsel claims on direct appeal.  However, the Supreme Court in <u>Massaro v. United States</u>, 538 U.S. 500 (2003), recently excepted ineffective-assistance-of-counsel claims from the general procedural default rule.  <u>Id.</u> at 508-09 (noting that it is preferable to raise ineffective-assistance-of-counsel claims in a § 2255 motion as opposed to a direct appeal and that the failure to raise such a claim "on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255").  Accordingly, this court will consider Movant's ineffective assistance of trial counsel claims on the merits instead of applying the "cause and prejudice" test set forth in <u>Lynn</u> and <u>Mills</u>.  This court will also consider her ineffective assistance of appellate counsel claims because they could only be raised for the first time in the instant motion.

The standard for evaluating ineffective assistance of counsel claims was set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  The analysis is two-pronged, and the court may "dispose of the ineffectiveness claims on either of its two grounds."  <u>Atkins v. Singleterry</u>, 965 F.2d 952, 959 (11th Cir. 1992); <u>see Strickland</u>, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffectiveness claim . . . to address both

AO 72A
(Rev.8/82)

components of the inquiry if the defendant makes an insufficient showing on one.").

Movant must first show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The court must be "highly deferential," and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Further, "[a] strategic decision by defense counsel will be held to constitute ineffective assistance 'only if it was so patently unreasonable that no competent attorney would have chosen it.'(citation omitted)" Kelly v. United States, 820 F.2d 1173, 1176 (11th Cir. 1987). Likewise, appellate counsel is not obligated to raise on appeal every conceivable trial error. Indeed, "the hallmark of effective appellate advocacy" is the ability to "winnow[] out weaker arguments on appeal and focus[] on 'those more likely to prevail' . . ." Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Jones v. Barnes, 463 U.S. 745, 751-52 (1983)).

To meet the second prong, Movant must also demonstrate that counsel's unreasonable acts or omissions prejudiced her. See Strickland, 466 U.S. at 694. That is, Movant "must show that there is a reasonable probability that, but for counsel's

31

unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

In this case, Movant has failed to demonstrate the second prong of the Strickland test – that any of counsel's alleged deficient conduct prejudiced her in connection with her trial or on direct appeal.   Based on the overwhelming evidence presented at trial as to her guilt on all 35 counts, Movant has failed to demonstrate that the results from the trial would have been different but for counsel's unprofessional errors.

Upon careful review of the evidence presented at Movant's trial, this court finds that Movant created an entity named "Agri-tech" as a device to get a commission on the equipment that would be sold to QGC (Ghana) for rice project and would be paid for with proceeds of the SouthTrust Bank loan.   The evidence at trial further demonstrated that Movant caused four fraudulent "Agri-Tech" invoices to be submitted for the purpose of influencing SouthTrust Bank to advance more than $2 million for Movant's personal use pursuant to the Ex-Im Loan.   Finally, the evidence showed that Movant caused three additional fraudulent "Agri-Tech" invoices to be submitted for the purpose of influencing SouthTrust Bank to pay more than $7 million for Movant's personal use pursuant to the Natwest Loan.

32

In contending that Mr. Brehm was ineffective at trial, Movant devotes a large amount of her discussion to claiming that SouthTrust Bank made a $1.2 million personal loan to her in connection with the Ex-Im Loan. Movant further contends that representatives of SouthTrust Bank financed the 15 percent down payment for the Ex-Im Loan in the amount of $1,050,000. Although difficult to decipher, Movant appears to contend that Mr. Brehm suppressed evidence and failed to call certain witnesses that could have established that Movant legitimately acquired the personal loan in order to cover the down payment requirement on the Ex-Im Loan. Movant contends that the introduction of this evidence at trial would have served to negate her guilty intent on most or all of the 35 counts brought against her.

The trial transcripts reflect that Movant gave extensive, unfettered testimony as to many of the arguments she now claims that Mr. Brehm should have raised at trial or pursued more vigorously. Indeed, Movant fully presented her explanations to the jury regarding the $1.2 million loan and how it related to the satisfaction of the down payment for the Ex-Im loan. (T at 1068-70, 1136-41). The jury, therefore, was fully aware of Movant's "line of defense" that she now proffers in connection with the instant § 2255 motion. In contrast to Movant's testimony, however, an independent certified accountant, William

33

L. Brumlow, testified that there was no evidence of any personal loan given to Movant during the relevant period. (T at 690-91). In addition, ample evidence presented at trial reveals that the source of the $1,050,000 down payment came directly from the Ex-Im loan proceeds that were traceable to $1,954,389 of Ex-Im loan proceeds that SouthTrust Bank paid out on a fraudulent "Agri-Tech" invoice. (Govt. Exs. 2, 20, 23, 24, 26, 42, 43, 44, 45, 46, 47, 48, 49, 49A, 50, 51, 52, 55, 84, 103, 133) (T at 306-07).

Even if Movant could successfully establish through witness testimony or evidence purportedly suppressed by Mr. Brehm that she had been loaned $1.2 million, Movant fails to demonstrate any relationship to Movant's actionable fraud, which is the scheme to submit false and fraudulent "Agri-Tech" invoices to obtain loan proceeds for her own personal use.  In other words, whether or not SouthTrust Bank financed the down payment on the Ex-Im loan by giving Movant a personal loan has no bearing on any of the crimes charged in the indictment regarding the submission of false invoices.[3]  Accordingly, any purported attorney error cited by Movant regarding the failure to introduce witnesses or

---

[3]  Indeed, testimony at trial reflects that the down payment on the Ex-Im loan could have been financed or made in cash.  (T at 93-94).  If SouthTrust Bank had made a $1.2 million loan to Movant, as she claims, the bank's losses would have increased as this "alleged" loan was never repaid.

34

"suppressed" evidence does not suggest a reasonable probability that the trial results would have been different.

Likewise, Movant also fails to demonstrate how this court's refusal to grant a continuance would have affected the outcome of the trial in light of the overwhelming evidence of guilt. Further, as discussed above, this court denied Movant's claim in Grounds 1 and 12 because she failed to "clearly and unequivocally" assert her right to self-representation. Thus, any failure of Mr. Brehm to object at trial or on appeal on this issue is also without merit and would not, therefore, serve to change the outcome of the trial. As discussed below, Movant also cannot demonstrate any underlying error with regard to whether the indictment was multiplitous or whether any sentencing errors occurred. As such, Movant cannot establish the requisite prejudice regarding Mr. Brehm's alleged failure to object to the indictment counts or to her sentence.

In light of the overwhelming evidence at trial as to Movant's guilt on all 35 counts, Movant has failed to show that any of her claims regarding ineffective assistance of counsel at trial or on appeal would have affected the outcome of this case. The court finds that many of Movant's arguments regarding her ineffective-assistance of counsel claims are nonsensical, conclusory, or lacking any basis in law or fact. See Wilson v.

35

United States, 962 F.2d 996, 998 (11th Cir. 1992). For example, Movant submits no coherent explanation or evidence to support her theory that the trial transcript was altered in any way to her detriment.  She further provides no evidence to suggest that evidence was tampered with or that fake documents were placed into evidence.  Accordingly, Movant is not entitled to either an evidentiary hearing or § 2255 relief as to any of her ineffective assistance of counsel claims.  See Stephens v. United States, 14 F. Supp. 2d 1322, 1334 (N.D. Ga. 1998) (Section 2255 petitioner not entitled to hearing on ineffective assistance of counsel claim where underlying claims are based on unsupported generalizations, are affirmatively contradicted by the record, or otherwise fail as a matter of law).[4]

**C.   Ground 4**

In Ground 4, Movant claims that her due process rights were violated when the trial court denied her claim of ineffective-assistance-of-counsel claim without an evidentiary hearing. Movant presented this claim to the Eleventh Circuit Court of Appeals.  However, in affirming Movant's convictions and

---

[4] Because Movant has failed to establish the "prejudice" prong of the Strickland standard, it is unnecessary for this court to examine whether Mr. Brehm rendered incompetent assistance to Movant at trial and on appeal.

sentence, the Eleventh Circuit declined to rule on this claim. [See Doc. No. 223].

Movant's claim in Ground 4 is without merit.  This court has found no authority which suggests that Movant has a constitutional right to an evidentiary hearing on ineffective assistance-of-counsel claims before a direct appeal is completed. Further, before this court denied her ineffective-assistance-of-counsel claims in connection with her post-trial motion for new trial, this court conducted a lengthy hearing where it allowed Movant to present extensive arguments as well as submit evidence to the court in connection with her claims.  Accordingly, Movant has provided no basis to support her due process claim in Ground 4, and she is not entitled to § 2255 relief regarding same.

**D.**      **Ground 5**

In Ground 5, Movant claims that the Government withheld exculpatory evidence from the grand jury and the jury at trial. Specifically, Movant contends that the Government improperly withheld the following evidence: (1) a four-page document allegedly verifying that SouthTrust Bank financed the 15 percent down payment; (2) a disbursement package which purportedly showed that SouthTrust Bank did not disburse the $3.5 million to Agri-Tech; (3) unidentified evidence showing that $14.9 million was

37

paid to SouthTrust Bank in connection with the Natwest Loan; and (4) the last eleven days of a December 1997 bank statement which would have purportedly proven Movant's innocence; and (5) the "real" letter of credit to Agri-Tech.

Movant's claim in Ground 5 was never presented before the Eleventh Circuit on direct appeal. Ground 5, therefore, is procedurally defaulted and cannot be considered unless the Movant satisfies the "cause" and "prejudice" requirement of <u>Mills</u>. Movant has failed to allege any cause to excuse the failure to raise Ground 5 on direct appeal. Moreover, Movant cannot show prejudice to excuse this procedural default.

In <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the Supreme Court held that the Government violates a defendant's due process rights when it withholds material evidence that is favorable to the defendant's case. <u>Id.</u> at 87. To prove a Brady violation, Movant must demonstrate that (1) the prosecution suppressed evidence; (2) the suppressed evidence was exculpatory or favorable to the defendant's case; and (3) the suppressed evidence was material. <u>Jacobs v. Singletary</u>, 952 F.2d 1282, 1288 (11th Cir. 1992). Pursuant to <u>Brady</u>, excluded evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>United States v. Bagley</u>,

38

473 U.S. 667, 682 (1985).  Further, the obligation to disclose exculpatory evidence under <u>Brady</u> applies only to trials, and not with regard to the Government's presentation to the grand jury. <u>See</u> <u>United States v. Williams</u>, 504 U.S. 36, 51-55 (1992); <u>United States v. Gilbert</u>, 198 F.3d 1293, 1304 (11th Cir. 1999).

In the instant case, the Government had no obligation to disclose any exculpatory evidence to the grand jury.  <u>See</u> <u>Williams</u>, 504 U.S. at 51-55.  Further, Movant fails to present any coherent argument that would cause this court to question whether the Government suppressed the evidence cited by Movant or whether any of the purported "exculpatory evidence" would have been material at trial.  As discussed above, any question as to whether SouthTrust Bank financed the Ex-Im loan has no relationship to the fraud charges brought against Movant in connection with the submission of false Agri-Tech invoices. Likewise, Movant offers nothing more than conclusory and nonsensical assertions regarding documents that were allegedly suppressed by the Government or tampered with to Movant's detriment.  Even assuming that the Government failed to disclose the evidence cited, Movant has failed to show that the result of the trial would have been different in light of the overwhelming evidence presented as to her guilt on all charges.  Accordingly,

AO 72A
(Rev.8/82)

Movant is not entitled to § 2255 relief with respect to her <u>Brady</u> claims in Ground 5.

**E.   Grounds 6, 19, 20, and 21**

The following claims raised by Movant were adjudicated on direct appeal: (1) the evidence was insufficient to support the guilty verdicts and convictions (Ground 6); (2) the trial court erred in denying Movant's motion for judgment of acquittal (Ground 19);[5] (3) the trial court abused its discretion by permitting evidence regarding improper monetary transactions not charged in the indictment (Ground 20); and (4) the trial court erred in permitting hybrid representation at trial (Ground 21). [<u>See</u> Doc. No. 223].   This court is, therefore, precluded from reviewing them on collateral review.   <u>Mills</u>, 36 F.3d at 1056. Accordingly, Movant is not entitled to § 2255 relief with respect to Movant's claims in Grounds 6, 19, 20, and 21.

**F.   Grounds 7, 9, and 10**

Movant claims that she was denied a photocopy of seized business and personal records (Ground 7), that the trial

---

[5] On direct appeal, it is undisputed that Movant challenged the sufficiency of the evidence presented at trial when she asserted that the trial court erred in denying Movant's motion for judgment of acquittal. While difficult to decipher, it appears that Movant essentially raises the same insufficiency-of-the-evidence claim with respect to her claims in Grounds 6 and 19 of the instant § 2255 motion. [<u>See</u> Doc. No. 226 at 13, 71-75; Doc. No. 236 at 1-11].

transcript was insufficient (Ground 9), and that she was denied the right to submit pro se motions on direct appeal (Ground 10). As an initial determination, this court concludes that these three grounds are not cognizable in the instant § 2255 proceeding because they do not raise constitutional issues and would not, if meritorious, constitute a fundamental defect that inherently results in a complete miscarriage of justice. Lynn, 365 F.3d at 1233; St. Pierre v. United States, Case No. 2005 WL 2126955 at *2-3 (M.D. Fla. Sept. 1, 2005).

Even if Movant's claims in Grounds 7 and 9 were cognizable in a § 2255 proceeding, Petitioner has procedurally defaulted these claims by failing to establish the requisite cause and prejudice to excuse her failure to raise these claims on direct appeal. With regard to Ground 10, the court notes that Movant was represented by counsel on direct appeal and could not, therefore, submit pro se pleadings before the Eleventh Circuit. Accordingly, Movant is not entitled to § 2255 relief with respect to her claims in Grounds 7, 9, and 10.

## G.  Grounds 11 and 15

In Grounds 11 and 15, Movant claims that the indictment alleged multiplicitous counts, in violation of the Double

41

Jeopardy Clause.[6]  Movant's double jeopardy claim in Grounds 11 and 15 was not raised on direct appeal, and is, therefore, procedurally barred in the instant § 2255 motion unless Movant can establish a sufficient basis for overcoming the procedural bar.  See Mills, 36 F.3d at 1055.  On the issue of cause, Movant claims that her counsel, Mr. Brehm, rendered ineffective assistance, in part, because he failed to raise the issue of multiplicity at trial.  Movant further claims that Mr. Brehm rendered ineffective assistance when he failed to raise this issue on appeal.  Even if Movant has demonstrated cause, Movant has failed to establish the requisite prejudice to excuse her failure to raise her double jeopardy claim on direct appeal because this ground is without merit.

The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. Amend. V.  The purposes of this provision is "to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged

---

[6]  A review of Movant's allegations in Ground 15 claim does not appear to indicate a separate double jeopardy claim apart from the issue of multiplicity. [See Doc. 226 at 16].  Rather, Movant simply restates facts in Ground 15 that relate to her challenge to the sufficiency of the evidence.  In any event, the court will construe Grounds 11 and 15 as raising one double jeopardy claim involving the issue of multiplicity.

offense." Missouri v. Hunter, 459 U.S. 359, 365 (1983) (citations omitted). The Double Jeopardy Clause provides three basic protections: (1) it protects against a second prosecution for the same offense following acquittal; (2) it protects against a second prosecution for the same offense following conviction; and (3) it protects against multiple punishments for the same offense. Ohio v. Johnson, 467 U.S. 493, 498 (1984) (citations omitted); see also United States v. Boldin, 772 F.2d 719, 725 (11th Cir. 1985). The double jeopardy claim at issue concerns only the third basic protection.

An indictment is multiplicitous if it charges a single offense in more than one count. United States v. de la Mata, 266 F.3d 1275, 1288 n.12 (11th Cir. 2001) (citing United States v. Sirang, 70 F.3d 588, 595 (11th Cir. 1995)). The Blockburger test, which dictates that two counts do not constitute the same offense if each requires proof of a fact which the other does not, is used to determine whether two counts in an indictment are multiplicitous. See United States v. Howard, 918 F.2d 1529, 1533 (11th Cir. 1991) (citing Blockburger v. United States, 284 U.S. 299, 304 (1932)). Thus, if each offense requires proof of a fact that the other does not, the Blockburger test is satisfied despite any overlap in the proof necessary to establish the crimes. United States v. Moore, 43 F.3d 568, 571 (11th Cir.

43

1995) (citing <u>Iannelli v. United States</u>, 420 U.S. 770, 785 n.17 (1975)).

In this case, Movant was charged with 35 counts arising under four separate statutes, 18 U.S.C. §§ 1001, 1014, 1344, and 1957. A review of each of these statutes reflects that they require proof of different elements. Further, each of the thirty-five counts charged a different offense that required proof of facts not included in any other count. Because Movant was not subject to multiple punishments for the same offense, the indictment did not violate the Double Jeopardy Clause as none of the counts in the indictment were multiplicitous. Accordingly, Movant is not entitled to § 2255 relief with respect to her double jeopardy claims in Grounds 11 and 15.

**H.   Grounds 13 and 14**

In Grounds 13, Movant claims that the undersigned exhibited bias toward Movant at trial which prejudiced her defense.   In Ground 14, Movant claims that both the prosecutor and the undersigned interfered with Movant's right to present a defense, including calling defense witnesses.   In connection with these claims, Movant asserts the following: (1) the Government presented false and manufactured evidence; (2) the Government changed the pre-trial transcripts to cover up the undersigned's denial of her right to self representation;  (3) the undersigned

allowed the prosecutor to make fun of Movant by referring to her as "Perry Mason" (see T at 1154) ; and (4) the undersigned constantly prevented Movant from defending herself and was predisposed to Movant's guilt.

These prosecutorial and judicial misconduct claims were not raised on direct appeal, and are, therefore, procedurally defaulted and cannot be addressed in this motion absent a showing by Movant of cause and prejudice. See Mills, 36 F.3d at 1055. Movant has failed to allege any cause to excuse the failure to raise Grounds 13 and 14 on direct appeal. Moreover, Movant cannot show prejudice to excuse this procedural default.

Prosecutorial or judicial misconduct violates a defendant's constitutional rights if the conduct, examined in the context of the entire proceedings, renders the trial so fundamentally unfair that the result is a conviction that denies the defendant due process. See Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); Davis v. Zant, 36 F.3d 1538, 1546 (11th Cir. 1994); Gayle v. Scully, 779 F.2d 802, 806 (2d Cir. 1985). To prevail on these claims, a defendant must show a reasonable probability that the alleged misconduct changed the outcome of the case, thereby rendering his trial fundamentally unfair. See Brooks v. Kemp, 762 F.2d 1383, 1400-02 (11th Cir. 1985)(en banc), vacated on

45

<u>other grounds</u> 478 U.S. 1016 (1986), <u>reinstated</u>, 809 F.2d 700 (11th Cir. 1987)(en banc).

In the instant case, Movant offers no evidence or argument that would lead this court to conclude that the prosecutor presented false or manufactured evidence or that the Government conspired in any way to delete portions of the trial transcript. A careful review of the trial transcript reveals that this court was more than fair to Movant at trial in permitting her to present her defenses to the jury. Movant simply presents no evidence to substantiate her claim that the undersigned was predisposed to her guilt. Finally, while the prosecutor's sarcastic "Perry Mason" reference may not have portrayed Movant in a particularly good light, Movant fails to show a reasonable probability that this conduct changed the outcome of the case, thereby rendering her trial fundamentally unfair. Overall, Movant has failed to demonstrate that any conduct on the part of the prosecutor or the undersigned rendered her trial fundamentally unfair. Accordingly, Movant is not entitled to § 2255 relief as to her claims in Grounds 13 and 14.

I.   **Grounds 16 and 18**

Movant claims in Ground 16 that the trial court and the Eleventh Circuit erred and violated Movant's rights under 28 U.S.C. § 1915(d) when it denied her court-appointed counsel's

46

various requests to withdraw pre-trial, at trial, post-trial, and on appeal.   In Ground 18, Movant claims that she was forced to keep inexperienced counsel, who had not been admitted to the United States District Court until March 2, 2004.

Movant's claim in Grounds 16 and 18 were not raised on direct appeal, and are, therefore, procedurally barred in the instant § 2255 motion unless Movant can establish a sufficient basis for overcoming the procedural bar.  See Mills, 36 F.3d at 1055.[7]  In the instant case, however, Movant cannot establish the requisite prejudice to excuse her failure to raise Grounds 16 and 18 on direct appeal because these grounds are without merit.

Movant relies on Mallard v. United States District Court for the Southern District of Iowa, 490 U.S. 296 (1989), to support her claims in Grounds 16 and 18.  In Mallard, the Supreme Court held that § 1915(d) does not authorize a district court to appoint an unwilling attorney to represent an indigent litigant in a civil case.  Id. 490 U.S. at 310.  Mallard, therefore, is inapposite because Mr. Brehm was appointed as Movant's attorney in a criminal case, and not a civil case.  Moreover, with respect

---

[7] The Court recognizes that a portion of Movant's claim in Ground 16 – challenging the Eleventh Circuit's denial of any request to withdraw – was not available to Movant on direct appeal.  Nevertheless, as discussed herein, this part of Ground 16 fails to state a § 2255 claim as it is without merit.

AO 72A
(Rev.8/82)

to her claim in Ground 18, Movant fails to support her allegation that Mr. Brehm was not admitted to the United State District Court until March 2, 2004. The court notes that Mr. Brehm has been admitted and remained in good standing with this court since October 16, 1986.  Accordingly, Movant is not entitled to § 2255 relief with respect to her claims in Grounds 16 and 18.

**J.    Ground 17**

In Ground 17, Movant claims that the trial court committed several errors at sentencing.  Specifically, Movant asserts the following sentencing errors: (1) the trial court erred in determining loss under the Sentencing Guidelines by including the Republic of Ghana as a victim (See PSR at ¶ 101); (2) the trial court erred in determining loss under the Sentencing Guidelines by including SouthTrust Bank as a victim (See id.); (3) the trial court erred by imposing a two-level enhancement to Movant's base offense level because Movant's offense involved more than minimal planning (PSR at ¶ 102); (4) the trial court erred by imposing a two-level enhancement to Movant's base offense level because the offense involved sophisticated means (PSR at ¶ 103); (5) the trial court erred by imposing a two-level enhancement to Movant's base offense level because the offense affected a financial institution (PSR at ¶ 104); (6) the trial court erred by imposing a four-level enhancement to Movant's base offense level based on

48

Movant's leadership role (PSR at ¶ 106); and (7) the trial court erred by imposing a two-level enhancement to Movant's base offense level based on Movant's obstruction of justice.

Movant's first sentencing claim – that the trial court erred in calculating loss by including the Republic of Ghana as a victim – was determined adversely to Movant on direct appeal. This court is, therefore, precluded from reviewing it on collateral review. <u>Mills</u>, 36 F.3d at 1056. Movant's remaining sentencing claims were not raised on direct appeal, and are, therefore, procedurally defaulted and cannot be addressed in this motion absent a showing by Movant of cause and prejudice. <u>See</u> <u>Mills</u>, 36 F.3d at 1055. Movant has failed to allege any cause to excuse the failure to raise any of these sentencing claims on direct appeal.

Moreover, Movant cannot show prejudice to excuse procedural default as to all of the remaining sentencing claims. The evidence presented at trial and at sentencing demonstrates that Movant's fraud scheme directly victimized SouthTrust Bank. Movant offers nothing but unsupported and baseless assertions in attempting to prove that she was the victim of fraud perpetrated by SouthTrust Bank in connection with the loans at issue. With respect to her claims challenging the various two and four-level sentencing enhancements, Movant again offers unsupported and

baseless arguments, which fail to show how any of these enhancements were erroneous.[8]   Accordingly, Movant is not entitled to § 2255 relief with respect to any of her sentencing claims in Ground 17

**K.   Ground 22**

In Ground 22, Movant claims that the trial court erred and violated several of Movant's constitutional rights when it forced Movant to abandon work on her bankruptcy case.   This claim was not raised on direct appeal, and is, therefore, procedurally barred in the instant § 2255 motion unless Movant can establish a sufficient basis for overcoming the procedural bar.   See Mills, 36 F.3d at 1055.   In the instant case, however, Movant cannot establish the requisite prejudice.   Movant's claim in Ground 22 is without merit in that it has absolutely no relation to her underlying criminal proceeding, conviction, or sentence. Accordingly, Movant is entitled to no § 2255 with respect to this claim.

---

[8]   In objecting to the enhancement based upon her role as a leader, Movant overlooks the fact that this court reduced her four-level enhancement to a two-level enhancement.   (ST at 76-82).   Movant offers no argument to suggest that this two-level enhancement was otherwise improper.

50

## VI.   <u>Conclusion</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** that Movant Juliet R. Cotton's 28 U.S.C. § 2255 motion, as supplemented and amended [Doc. Nos. 226, 235, 236, 242, 258, 261, 271], is **DENIED** and that the instant action is **DISMISSED**.

**IT IS SO ORDERED**, this <u>31st</u> day of October, 2005.


<u>/s/ Charles A. Pannell, Jr.</u>
CHARLES A. PANNELL, JR.
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)